NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEPHEN McCARTY and THE CONCEPT GROUP NETWORK, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | Civil Action No. 12-3279 (CCC) |
| v. | : | |
| | : | OPINION |
| | : | |
| STEVEN HOLT, | : | |
| | : | |
| Defendant. | : | |

**CECCHI**, District Judge.

## I.   INTRODUCTION

This matter comes before the Court by way of Defendant's motion to dismiss Plaintiffs' Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. The Court has considered the submissions made in support of and in opposition to the instant motion.[1] Based on the reasons set forth below, Defendant's motion to dismiss is granted and Plaintiffs' Complaint is dismissed without prejudice. To the extent that Plaintiffs can amend their Complaint in accordance with this decision, Plaintiffs are granted fourteen (14) days in which to file an Amended Complaint which cures the pleading deficiencies discussed below.

---

[1] The Court considers arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

II.    **BACKGROUND**

Plaintiffs Stephen McCarty ("McCarty") and the Concept Group Network, a limited liability company, were members of the Nutmeg Welfare Benefit Plan and Trust (the "Trust") for the purpose of investing in an employee welfare benefit plan, under Section §419(e) of the Internal Revenue Code.  (Compl. ¶¶ 2, 5; Greenberg Cert., Ex. A, 1, 9.)  Michael Millman ("Millman") formed the Trust, and at certain times, acted as the Trustee and/or Manager of the Trust.  (Id. ¶ 6.)  Millman was also an agent of the Lincoln Financial Group ("Lincoln"), the insurance company that issued insurance policies for the benefit of the Trust members.  (Id. ¶ 7.)  Defendant Steven Holt ("Holt") is an attorney who served as trustee of the Trust from approximately March 7, 2008 to March 28, 2008.  (Id. ¶¶ 3, 12.)

On December 29, 2005, McCarty made an insurance premium payment to the Trust in the amount of $200,000 in order to fund Plaintiffs' Welfare Benefit Plan.[2]  (Id. ¶ 18; Heines Cert., Ex. D, at 13.)   Without Plaintiffs' knowledge, in May 2006, Millman retained $50,000 of

---

[2] Although "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a motion to dismiss, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Here, Defendant Holt has attached to its motion to dismiss a plea agreement between Millman and the United States Attorney's Office for the District of Connecticut ("plea agreement"). (Heines Cert., Ex. D.)  Defendant argues that, based on information in the plea agreement, "Millman diverted for his own use $50,000 of the insurance premium payment made by Mr. McCarty close to two years prior to Mr. Holt becoming Trustee."  (Def. Br. 3, ¶ 9.)  Defendant argues that the Court may consider the plea agreement in deciding the motion to dismiss because it is a public record and Plaintiffs rely upon this document in their complaint in order to establish that Millman stole Plaintiffs' money.  (Def. Br. 6.)  Plaintiffs did not oppose the Court's consideration of Millman's plea agreement.  As such, considering the document as part of Defendant's motion to dismiss is appropriate.  Based on the plea agreement, McCarty made an insurance premium payment to the Trust in the amount of $200,000 on December 29, 2005 and in May 2006, Millman retained $50,000 of Plaintiffs' contribution.  (Heines Cert., Ex. D.)  Plaintiff has not provided dates for these two actions, but has not offered any argument to the contrary.

Plaintiffs' contribution, only paying $150,000 to Lincoln.  (Compl. ¶ 20; Heines Cert., Ex. D, at 13.)

On March 28, 2008, Holt denied Millman's attempt to make an unauthorized withdrawal from the Trust.  (Id. ¶¶ 14, 15.)  Following Holt's disapproval, Millman terminated Holt as Trustee and appointed himself as Holt's replacement.  (Id. ¶¶ 13, 15, 16.)  He then proceeded to make the unauthorized withdrawal/loans from the insurance policies of several Trust members/beneficiaries.  (Id. ¶¶ 14, 16.)

At some time during their membership, Plaintiffs sought to withdraw from the Trust and to open life insurance policies with a different plan.  (Id. ¶ 20.)  On July 16, 2008, Lincoln wired $141,502.24 to the Trust for the surrender of one of Plaintiffs' insurance policies.  (Id. ¶ 25.)  On September 30, 2008, Lincoln wired $137,977.64 to the Trust for the surrender of another policy Plaintiffs had with Lincoln.  (Id. ¶ 26.)  On October 30, 2008, Millman sent $93,037.50 to Fidelity for Plaintiffs' new insurance plan, retaining $186.442.38 of Plaintiffs' money.  (Id. ¶¶ 27, 28, 29.)

Plaintiffs filed a Complaint against Holt for breach of fiduciary duty, breach of contract, and negligence with respect to his position as trustee of the Trust.  (See Compl.)  Plaintiffs allege that Holt knew that Millman was operating the Trust in an illegal manner and had a duty to notify the Trust members, but failed to do so.  (Id. ¶¶ 30-33.)  On May 31, 2012, Defendant filed the instant motion to dismiss, claiming that (1) Plaintiffs' claims are preempted by ERISA; (2) none of the alleged illegal and improper actions took place while Holt was a trustee; and (3) Holt was a directed trustee and only had limited fiduciary responsibility during his time as trustee. (Defendant's Brief.)

## III.   **LEGAL STANDARD**

To survive dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint, "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.   See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).   "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.   Furthermore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (internal citation omitted).   Thus, in assessing a complaint's sufficiency through the 12(b)(6) framework, a court must consider only those allegations, which are factual in nature, ignoring allegations that are conclusory or merely restatements of the elements of the claim.

To determine the sufficiency of a complaint a court must engage in a three step analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675.   Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.   At this step, the court must disregard "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," leaving only factual allegations for the court's consideration.   Santiago v. Warminster Twp., 629 F.3d 121, 131 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 678).   Finally, "where there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. at 130 (citations omitted).

In determining whether the facts alleged indicate an entitlement to relief, the court must determine whether a claim is facially plausible.  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Santiago, 629 F.3d. at 132 (quoting Iqbal, 556 U.S. at 678).  "Determining whether a complaint states a plausible claim is context-specific," but the reviewing court must draw on its judicial experience to determine whether the well-pleaded facts when accepted as true support the inference that the alleged misconduct is plausible and not "merely possible." Iqbal, 629 F.3d. at 678.

## IV.   DISCUSSION

### A.  The Employee Retirement Income Security Act ("ERISA") Preempts Plaintiffs' State Law Claims

Defendant argues that Plaintiffs' state law claims are preempted by ERISA, because they relate to the Trust, which was an ERISA-governed employee benefit plan.  (Def.'s Br. 9.)  In opposition, Plaintiffs assert that their claims are not preempted by ERISA because they are seeking the insurance payments retained by Millman, which are not "ERISA-regulated plan benefits." (Pls.' Br. 11.)

The Court finds that Plaintiffs' claims are preempted by ERISA.  Section 514(a) of ERISA provides that it "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  "[T]he phrase 'relate to' [is] given its broad commonsense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987). The Third Circuit has held that a state law claim

relates to an employee benefit plan if "the existence of an ERISA plan [is] a critical factor in establishing liability" and "the trial court's inquiry would be directed to the plan." 1975 Salaried Ret. Plan for Eligible Employees of Crucible, Inc. v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992) (citing Ingersoll-Rand Corp. v. McClendon, 498 U.S. 133, 139-40, (1990)).  Thus, ERISA should preempt a state cause of action in the case where "if there were no plan, there would have been no cause of action."  Id.

This Court has held that when a plaintiff's state law claims relate to an ERISA-governed plan, they are preempted.  See Crumley v. Stonhard, Inc., 920 F. Supp. 589 (D.N.J. 1996) (finding that plaintiff's state law claims for breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, and breach of implied covenant of good faith and fair dealing were preempted); see also Martellacci v. Guardian Life Ins. Co. of Am., No. 08-2541, 2009 U.S. Dist. LEXIS 13773 (E.D. Pa. Feb. 20, 2009) (finding that plaintiff's claims for breach of contract, bad faith/negligence, negligent misrepresentation, breach of fiduciary duty, fraud, and intentional infliction of emotional distress were preempted by ERISA).  State law claims such as breach of contract and negligence are typically preempted by ERISA.  See, e.g., Ford v. Unum Life Ins. Co. of Am., 351 Fed. Appx. 703, 706 (3d Cir. 2009) ("State law claims such as . . . breach of contract, negligence, and intentional infliction of emotional distress - would ordinarily fall within the scope of ERISA preemption, if the claims relate to an ERISA-governed benefits plan.").

Plaintiffs' Complaint contains three causes of action: breach of fiduciary duty, breach of contract, and negligence.  Plaintiffs claim that as a discretionary trustee, Defendant was a fiduciary of the Trust, which is an employee welfare benefit plan under Section 419(e) of the IRC, a plan that is governed by ERISA.  Because Plaintiffs' claims relate to the Defendant's duty

as a trustee of the Trust, this cause of action could not be sustained without reference to the plan. Accordingly, section 514 of ERISA preempts Plaintiffs' state law claims.

### B. Defendant's Fiduciary Duty to Plaintiffs at the Time of Millman's Actions

Defendant argues that he only owed a duty for the period of time he acted as a fiduciary. (Def.'s Br. 12.) He asserts that he did not breach his fiduciary duty during the three week period from March 7, 2008 to March 28, 2008, during which he acted as trustee of the Trust. (Id.) He claims that none of the actions that harmed Plaintiffs took place during Defendant's time as trustee. (Id. at 13.) In opposition, Plaintiffs argue that Defendant breached his fiduciary duty by "failing to notify Plaintiffs that Millman had failed to turn over premiums, was taking unauthorized withdrawals from Trust members' insurance policies and was otherwise taking actions that had the [e]ffect of causing Plaintiffs damages." (Compl. ¶ 36.) Plaintiffs further argue that Defendant knew or should have known that Millman was converting and withholding funds from the Trust. (Pl.'s Br. 16-17.) Because of this, Plaintiffs assert that Defendant had an affirmative duty to inform Plaintiffs of these "potentially harmful circumstances." (Pl.'s Br. 17.)

Under ERISA, "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty . . . if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary."   29 U.S.C. § 1109(b); see Gluck v. Unisys Corp., No. 90-1510, 1995 U.S. Dist. LEXIS 12092, at *32-33 (E.D. Pa. Aug. 21, 1995) (entering judgment in favor of defendants who were not members of the committee in question at the time the committee breached its fiduciary duty).

Plaintiffs cite to Ream v. Frey, 107 F.3d 147 (3d Cir. 1997) in support of their opposition. In Ream, Fulton Bank served as the trustee for an ERISA pension plan from the time the plan was established.  Frey served as the plan administrator.  107 F.3d at 149.  During Fulton's tenure

as trustee, Frey failed to provide information to Fulton and failed to remit employer matching contributions. Id. at 150. After attempting to rectify the situation, Fulton ultimately resigned as trustee and requested that a successor be named. Id. Frey never responded, so Fulton issued a check to the sole shareholder and designated him as the successor trustee. Id. The shareholder endorsed the check and then converted all of the plan assets for his own use. Id. The Third Circuit found that the trustee did not act prudently in sending the plan assets to the shareholder and in failing to inform the beneficiaries of the plan that Frey was experiencing difficulties, when the trustee had been informed of the circumstances. Id. at 156.

Ream is distinguishable from the instant matter. Here, McCarty made a $200,000 insurance premium payment in December 2005, to be held by the Trust. In May 2006, Millman sent only $150,000 of that premium payment to the insurance company, keeping $50,000 for his own use. Almost two years later, in March 2008, Holt became Trustee. While Holt was trustee, Millman attempted to make an unauthorized withdrawal and/or loan from the trust. When Defendant refused to approve these withdrawals, Millman terminated Defendant, appointed himself as trustee, and then made the unauthorized withdrawals. Therefore, unlike in Ream, where the trustee had been in its position at the time of the breach, Holt was not trustee when Millman committed the improper activities.

Plaintiffs also cite to Glaziers and Glassworker Union Local No. 252 Annuity Fund v. New Bridge Securities, Inc., 93 F.3d 1171 (3d Cir. 1996), arguing that Defendant's fiduciary duty extended beyond his termination date and that he was obligated to inform the beneficiaries of Millman's activities despite the fact that he was no longer trustee. 93 F.3d at 1183-84. In Glaziers, the circuit court held that the trustee, who had resigned from his position, was responsible for making sure that his duties were discharged prudently. In support of its decision,

the Third Circuit cited to similar cases where the trustees had also resigned and were required to properly discharge their duties.  Id. (citing Chambers v. Kaleidoscope, Inc., Profit Sharing Plan and Trust, 650 F. Supp. 359, 369 (N.D.Ga. 1986); Pension Benefit Guaranty Corp. v. Greene, 570 F. Supp. 1483, 1488 (W.D.Pa. 1983); Freund v. Marshall & Ilsley Bank, 485 F. Supp. 629, 635 (W.D.Wis. 1979)).   Glaziers and those cases cited by the Third Circuit can also be distinguished from the case at hand, because unlike those defendants who resigned, Defendant here was terminated from his position as trustee.  The Court finds this to be a significant distinction, as a resigning trustee would have the opportunity to plan for his departure, to choose a new trustee, and to take prudent steps to discharge his duties; whereas a trustee who was terminated would not have that opportunity.  Therefore, the Court finds that Plaintiffs have not adequately stated a claim that Holt breached his fiduciary duty during his tenure as trustee of the Trust.  Furthermore, Plaintiffs have not established that Defendant's duty extended beyond his termination date.  Thus, Plaintiffs have failed to sufficiently establish a claim for breach of fiduciary duty.

### C. Plaintiffs Failed to Sufficiently State a Claim That Holt Breached His Duty as Directed Trustee

Finally, Defendant argues that as a "directed trustee," he was only subject to Millman's instructions, as per the terms of the trust.  (Def.'s Br. 14.)  As such, Defendant asserts that Holt is not liable for Plaintiffs' losses unless they are alleging that he failed to comply with Millman's "proper directions" or that he complied with directions that were in violation of the terms of the plan or ERISA.  (Id.)  In opposition, Plaintiffs claim that despite being a "directed trustee," Holt still failed to act as a "prudent Trustee," alleging that Defendant had knowledge of Millman's fraudulent activities, but did not attempt to remedy the breach.  (Id.)  Further, Plaintiffs assert

that Holt enabled Millman's breach, making Holt liable as a co-fiduciary pursuant to 29 U.S.C. §

1105.  (Pl.'s Br. 21.)

Under ERISA, a directed trustee can be relieved of "fiduciary obligations regarding the

management and control of a plan's assets when the trustee is 'directed' by the plan's designated

fiduciaries," making them only "subject only to the 'proper directions' of the named fiduciary."

Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1102 (9th Cir. 2004) (citing 29 U.S.C. §

1103(a)(1)); see also Lalonde v. Textron, Inc., 369 F.3d 1, 7 (1st Cir. 2004) (noting that directed

trustees have limited fiduciary duty under ERISA).   Directed trustees have extremely limited

fiduciary duties over a plan's assets.  Srein v. Frankford Trust Co., 323 F.3d 214, 222 (3d Cir.

2003) (citing Smith v. Provident Bank, 170 F.3d 609 (6th Cir. 1999)).

According to ERISA,

[a] person who is a named fiduciary, and upon acceptance of being named or
appointed, the trustee or trustees shall have exclusive authority and discretion to
manage and control the assets of the plan, except to the extent that (1) the plan
expressly provides that the trustee or trustees are subject to the direction of a
named fiduciary who is not a trustee, in which case the trustees shall be subject to
proper directions of such fiduciary which are made in accordance with the terms
of the plan and which are not contrary to this chapter,

29 U.S.C. § 1103(a)(1).  The trust plan establishes the parameters of a directed trustee's duties.

See Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995); see also Renfro v. Unisys Corp., 671

F.3d 314, 323 (3d Cir. 2011); In re RCN Litig., No. 04-5068, 2006 U.S. Dist. LEXIS 12929

(D.N.J. Mar. 21, 2006).

Under the Nutmeg Welfare Benefit Plan Document and the Nutmeg Welfare Benefit Plan

Trust Agreement ("Trust Agreement"), Defendant here is a directed trustee.   According to

Article II of the Trust Agreement, "The Trustee shall manage and invest in the Funds as it shall

be directed by the Plan Sponsor."  (Heines Cert., Ex. D.)  Further, the Trustee of the plan is

"under no duty to question any instruction received from the Plan Sponsor." (Id.)  Thus, under the Trust Agreement, Defendant did not have any authority to take discretionary actions. Instead, he was directed to act according the Millman's "proper directions."

Plaintiffs allege that Defendant had a "duty to notify members and beneficiaries of [the Trust] that Millman was engaging in illegal and unauthorized conduct." (Compl. ¶ 31.)  Further, Plaintiffs assert that Defendant had a "duty to advise the members and beneficiaries of [the Trust] that he was terminated and the reason for said termination."  (Id. ¶ 32.)  However, according to the Trust Agreement, Defendant did not explicitly have either of these duties. Plaintiffs did not allege that Defendant failed to comply with Millman's proper directions; nor do they claim that Defendant complied with Millman's improper directions.  As such, Plaintiffs have failed to properly allege that Defendant's inaction was a breach of his fiduciary duty.

In their opposition, Plaintiffs also allege that as a directed trustee, Holt is liable as a co-fiduciary under 29 U.S.C. § 1105.  Section 1105 provides that "[a] fiduciary shall be liable for another fiduciary's breach if he has knowledge of a breach by such other fiduciary unless he makes reasonable efforts under the circumstances to remedy the breach."  29 U.S.C. § 1105 (a)(3).  A party is only a co-fiduciary if he exercises control over the named fiduciary's decisions.  See Renfro v. Unisys Corp., 671 F.3d 314 (3d Cir. 2011).

Plaintiffs claim that Defendant had knowledge of Millman's breach.  However, the Complaint is devoid of any allegation that Defendant knew that Millman retained $50,000 of Plaintiffs' initial remittance, an event which took place in 2006, long before Defendant became Trustee.  Further, although Defendant denied Millman's attempt to make an improper withdrawal during his tenure as trustee, there are no facts to suggest that Defendant knew of Millman's breach following his termination.  Additionally, pursuant to that Trust Agreement, Holt was

11

"under no duty to question any instruction received from the Plan Sponsor." As such, Defendant did not have any authority over Millman's decision-making. Therefore, based on the facts set forth in the Complaint, Plaintiffs have not sufficiently set forth a claim that Holt is liable as a co-fiduciary for Millman's fraudulent activities.

## V.     <u>CONCLUSION</u>

Based on the reasons set forth above, Defendant's motion to dismiss Plaintiffs' Complaint is granted and Plaintiffs' Complaint is dismissed without prejudice. Plaintiffs' request for leave to amend is granted. To the extent that Plaintiffs can amend their Complaint in accordance with this decision, Plaintiffs are granted fourteen (14) days in which to file an Amended Complaint.

An appropriate Order accompanies this Opinion.

_____

**CLAIRE C. CECCHI, U.S.D.J.**

DATED:  February 27, 2013